First case to call for oral argument is USAA Casualty v. Sullivan. Counsel, whenever you're ready, you may proceed. Thank you, Your Honor. Your Honor, uh, Your Honor, Mr. Waters asked to sit up close so we could hear. So, uh, it makes me a little nervous. What? No. That's no problem. Well, we can always move down to Mr. Blyer. Yes. Right. We're always, we're always happy to have Mr. Blyer close to us. I'll be like a corpse in an Irish way. Problem is, he does that at jury trials, too. He sees the doc and talks to the jurors. It's hard to believe he says nothing, though. Oh, he does. Your Honor, being on this side of the lectern, sometimes on appeals, we come up here and the cases are dry and very limited in their scope, drudgery, frankly. And, you know, you feel like Elizabeth Taylor's seventh husband on her wedding night where you know what to expect and you just don't know how to make it interesting. But this particular case is, uh, has some far-reaching appeal. It really does. It's a case that has a very interesting legal question in which we have two Republican areas of law in the state, well-established areas of law that have butted heads in a particular case. And I think this is a situation where this court gets to be an architect, not a plumber, and gets to tell the trial judges all over the state how to deal with this situation. Here's the dilemma. My young man, my client, a young man, he was in a horrible wreck. He was a passenger. He was in a minivan. He was riding with a friend of his who was named Robert Tucker Clinton, who's a college-age son of an SIU professor named Robert Lowry Clinton, who still isn't home, comes home on school breaks. He's in the family car, a Kia Sedona. They're out near Pyramid State Park near Pedenville. They take a turn too sharp, an acute turn they take and they miss the turn, flip the van, horrible injuries, badly broken leg, $160,000 in medical bills, off work for over a year. Very serious, very serious case for this young man. We sue the host driver, Robert Tucker Clinton, the college-age boy. The response is the insurance, the automobile insurance company that covers the Clinton family, USAA, sue us back in a declarable judgment action. They allege an exclusion of name driver clause, which was issued after the policy was issued to the Clinton family, in which they, USAA, alleges that that clause, exclusion of name driver clause, excludes their college-age son, Robert Tucker Clinton. We obtained that policy, we obtained that clause. When we read the clause, examine the clause, we determined that the name on that exclusion, exclusionary clause, is Robert Tucker. We raise the argument that that creates a patent ambiguity. Robert Tucker is not on his face the same name, same person as Robert Tucker Clinton. We have an involved bench trial in front of Judge Campanella in Paytonville. USAA tries to bring in evidence, parole evidence, extrinsic evidence, to illuminate the intention of the parties. They bring in family members, they bring in the dad. They don't bring in the son or the mother, but they bring in the dad. They bring in a underwriter from San Antonio, Texas, named Kelly Romer, who tries to explain how a computer clerk could have hit the wrong key, which admitted the last name of Clinton on the exclusion of driver's form. And she testifies that the internal records of the company show that it's Robert Tucker Clinton. I object. I say this is extrinsic evidence. It should not be allowed in. I'm going to prevail in the case law. Judge Campanella overrules me. I bring up a later excluded driver form, which is in the renewed policy that was in effect at the time of the accident, which an excluded driver form is blank. There is no name on it at all. Kelly Romer testifies. Again, the underwriter from San Antonio says that's a mistake. I don't know why that's part of the policy, but it shouldn't be. That was a clerical error, too. It shouldn't have been in there. I object to that. That comes in. USA Day cites well-established case law for the proposition that if an ambiguity exists in a written contract, if the court finds an ambiguity, then the court can look at parole evidence to determine the intent of the party. Classic law school stuff. However, I'm, of course, barking and objecting and citing what I believe is controlling, unambiguous, clear, powerful case law, Illinois Supreme Court case law, Fifth District case law, that states unequivocally when an exclusionary clause in an insurance, automobile insurance contract or any insurance contract, when an exclusionary clause is not clear, then for public policy reasons, that's the end of the inquiry. We don't take parole evidence. The drafter suffers the consequences of a sloppily drafted policy, and that's the end of the inquiry, and coverage has to be found. The public policy reasons well recognized and enforced here in our state for decades and decades is that we favor insurance coverage when there's insurance policies being issued. The second public policy is that when the drafter drafts a sloppy policy, it's to be construed against them and in favor of insurance. Judge Campanella chose to follow the non-exclusionary rule, which basically he took into account the extrinsic parole evidence, and he ruled that there was no ambiguity between Robert Tucker and Robert Tucker Clinton, and that, therefore, the exclusionary driver clause was in effect, and, therefore, there's no coverage. He said in his order, which is C875 of the record, obviously the court is to weigh heavily the intent of the parties to the contract, in other words, the insurance policy. The reason for the exclusion of the Clinton surname, where Robert Tucker was concerned, was fully explained by plaintiff's witness, plaintiff's USAA. Plaintiff's witness, Kelly Romer, is being an operator oversight and due to manual entering of Robert Tucker's name when putting in his surname. We lose. There is no coverage. Now, Your Honor, here's where the two principles butt head-to-head. Mr. Jorge, excuse me. Yes, ma'am. I need some clarification. Judge Campanella actually took evidence before or after deciding that the clause was ambiguous? Before. He took it in the bench trial over my objection, and my objection was, Judge, you have to read the language of the exclusionary clause on his face. You have to determine whether it's ambiguous or not. My argument, of course, was Robert Tucker is not the same as Robert Tucker Clinton. It's not just a minor misspelling. You've left off an entire last name. It's an extremely important way to identify people in our society. And I get that, but my question really is, the timing of the issue seems to be that Judge Campanella took it all at once as opposed to making a ruling on whether the contract was ambiguous, and then if it's not ambiguous, it would seem that no evidence comes in. That's exactly what's my argument in the trial court, and my argument now, that public policy should be in this state in order to avoid a lot of litigation and, frankly, a lot of confusion, which I'm confused about what you're talking about right now, where he takes in all kinds of evidence, including underwriters from San Antonio, to tell us what their intent is. When I think the law is, you look at the policy language, number four corners, and if it's ambiguous, and if it's an exclusionary clause, then it's construed against the draft, the insurance company, and that's the end of the inquiry. We don't have to go to San Antonio to figure out what the coverage is. Well, I don't think that's public policy. I think that that's what the law says, isn't it? The law based on public policy. I agree. I agree. I mean, the law, here's the law in Illinois, undisputed, undisputed, where competing reasonable interpretations of a policy exist. In other words, is Robert Tucker, who is that? Is it Robert Tucker Clinton? Is it the son, or could it be somebody else? Where competing reasonable interpretations of a policy exist, a court is not permitted to choose which interpretation it will follow. That's outlaw marine court. That's an Illinois Supreme Court case. Rather, in such circumstances, the court must construe the policy in favor of the insurer and against the insurer that drafted the policy. That's pollutants. That's Illinois Supreme Court law. We interpret all ambiguities against the insurer that drafted the policy. That's in law. That's Illinois Supreme Court law. Provisions that limit or exclude coverage are to be construed liberally in favor of the insurer and most strongly against the insurer. I read that as trial judges should read the corners of the policy. They should say that is susceptible. That's either confusing, sloppy, or it's susceptible to two reasonable interpretations. And if they decide that, that's it. They stop. End of end part. Is that harsh? Can that be harsh against insurance companies? Yes, it can be. But it serves a great utility in that if that's the law, we're not going to San Antonio every time there's a sloppily written clause, exclusionary clause. We stop right at the trial judge. And, by the way, when it comes up on appeal, it's a de novo appeal. You know, you're reading the same thing as they are. And at that point, the court says this is a poorly written clause. Therefore, the exclusionary clause is not effective and there's coverage. So what does that do? What that does is prompt insurance companies to write clear and understandable clauses, not confusing language that when there is a major claim, the insurance companies can hide behind exclusionary language that's sloppy or poorly written and say, well, there's no coverage. And then you have unsophisticated insurance saying, geez, I don't understand this stuff and I don't understand that language and maybe I'm dumb and maybe, geez, I don't like lawyers and I don't like lawsuits and so I'm going to go away. Would you address the premium issue? Well, the premium issue, again, that is I don't know what it means when you're actually looking at the policy itself. In other words, can you go back and forensically determine whether there's been an exclusion because you look at the different rates and find that there's a lessening of the rates? I agree that that has some probative value to it now, but it still doesn't remove the ambiguity that's there in the policy. There's also that clause in there that says basically coverage is excluded when any vehicle operated by Robert Tucker Clinton and they're saying that's clear, understandable language that the kid's not covered. But as I point out in my brief, when you have that language itself is just a label. There's no verb in there. Coverage is excluded when any vehicle operated by Robert Tucker Clinton. By which coverage are we talking about? And where it appears in the debt sheet of the policy is under the coverage having to do with comprehensive. It doesn't say all coverages. It doesn't list the coverages under that. It's just a label toward the bottom of the page. So you look at that and go, okay, what does that mean? Well, it could very easily mean that there's no coverage for this kid when we're talking about rim cars, when we're talking about comprehensive damage or collision damage. Basically, the main clause that they're relying on in this case is the exclusionary driver clause. We don't cover Robert Tucker. Well, who is Robert Tucker? Well, you don't have a last name. Well, if we look long enough, we might be able to determine who it is. But do the courts from this point forward want to tell the insurance companies and the judges when you get a sloppy clause, let's open the floodgates and let's take all this evidence and try to figure out what they mean? Why should the courts be in a situation of cleaning up sloppy drafting, sloppy configuration, sloppy wording by the insurance company? They run a bad policy, stop writing. Thank you. Thank you. Counsel. Good morning. Please support counsel. My name is Mark Monroe. I do represent U.S.A. The question, main question here, as pointed out in the recent counsel, is whether the name driver exclusion, which I shortened up to MBE, excludes potential coverage of duty to defend and coverage of duty to identify Robert Tucker Clinton in the underlying court lawsuit. It's to this by Mr. Sullivan. U.S.A.'s arguments are based upon really three simple propositions. What is an ambiguity? There's got to be a reasonable alternative construction of a term. And as I pointed out in the brief, the problem in this case is, as far as the identity driver, Robert Tucker, this is not a term that this court can look at a dictionary, look at cases in order to define. It does have a meaning to the parties to the contract. And the primary objective of this court is to ascertain and enforce the intentions of the parties. Counsel, in his reply brief, talked about two different approaches, the intention of the parties and the public policy approach. The public policy approach. Do we reach the intent of the parties if the contract is not ambiguous? I mean, if the court first looks at the contract, does the court have the initial obligation to determine whether it's ambiguous or not? The question of whether there's ambiguity is a question of law. Correct. So, therefore, if the policy is unambiguous on its face, there would be no need to look at extrinsic evidence. And one of the problems I had with Judge Campanella's order, which is confusing to me, is where he indicates in the order that he denied motions for summary judgment because he found that a question of fact existed. But then he went on to say that for purposes of the order, he's not going to find a question of fact. And then he relies on fact, it seems like, to enter his ruling. So I'm having some difficulty, and maybe you can help me with the process that occurred, of determining what Judge Campanella actually did in this case. He took a lot of evidence, but first he finds there's questions of fact, then he says there's no question of fact, and then he discusses a case which has a lot of fact. Well, that's the Beltran case. Judge Campanella, I understood what you're saying with that with regard to the flip side of the case. In that case, it was one premium, one insured. In this case, there was no premiums paid. There were premiums paid for coverage of Mr. Clinton and his wife, but clearly not for the son, because he had been identified as an operator that USA would no longer agree to insure. But did he find an ambiguity at first round, so to speak, when he denied the, I think it was cross-motion for summary judgment? Judge Campanella said there was questions of fact. Cross-motions for summary judgment. Cross-motions for summary judgment. So he must have found ambiguity, right? I think Judge Campanella, if Your Honor would look at the trial transcript, in the middle of the trial, Judge Campanella was suggesting adjourning the trial and reasserting summary judgment motions. It's basically the evidence that he was being given was nothing in the world but walking him through this policy, and this policy is a renewal policy. Prior to the effective date of the name driver exclusion, Robert Tucker Clinton, the son, was a designated operator. USA monitors driving history of its operators. They determined he was no longer an acceptable risk to insure. They then sent this name driver exclusion with Robert Tucker, manually typed in to the insured. Mr. Clinton makes the decision to, in order to keep his policy, he will agree that his son is no longer an insured. Signs and faxes it and sends it back. What does USA then do? They renew the policies. There were three policy renewals after the effective date of the name driver exclusion. And I think Judge Campanella was recognizing that he had everything. The only thing that was presented in terms of documents different at the trial was the policy here before the effective date of the name driver exclusion, in which the son was a listed operator. And there was no coverage excluded when any vehicle operated by Robert Tucker Clinton. And there was no, in the listing of endorsements, name driver exclusion. That was really, that plus the April 2010 letter, transmitting the name driver exclusion to be signed by Mr. Clinton, was really all that he got. And I think Judge Campanella recognized that this evidence isn't telling me anything that I can't see from the particular documents. The evidence isn't telling me anything that was obvious from these documents. It was basically what the judge, through what happened. You have the son is an operator. USA makes a decision, we're not going to insure him anymore. Then you have the name driver exclusion. Now he's no longer an operator. You have this new language after all of the policy coverages are listed, the insurance provided. You've got this new language that wasn't in the declarations before the effective date of the name driver exclusion. Coverage excluded when any vehicle operated by Robert Tucker Clinton. This is new language. This is something that wasn't on the prior declarations. And as far as that referring to only the last part of the, or the Part D, the last coverage listed. We went over that in a brief. It's below Part D because that's the last part. It coincides with the coverages. Does it say coverage excluded? No, it says coverages excluded. Then you've got the post name driver exclusion declarations. Also, the first one says added, 6-18-10, name driver exclusion. That's the date of the name driver exclusion. Now you've got the whole name is set forth in the declarations. You've got the last name missing from the name driver exclusion. Any ambiguity as to who was meant by name Robert Tucker Clinton is clear from the declaration pages themselves. By naming the driver, the excluded driver, Robert Tucker Clinton in the declarations, any ambiguity is thus clarified. And as a point I want to make brief, name driver exclusions are, they have a reality associated with them. They don't pick a particular driver unless there's a reason. It's generally speaking someone in the household. It's usually a son or daughter. And there's been a particular issue with regard to claims and or poor driving record. So the idea that Robert Tucker could mean to be insured and USAA, someone that neither one of them knows or associates with claims under Mr. Clinton's policy is simply not reasonable. So you admit that there's an ambiguity. What you're saying, I think, though, is that the reasonable conclusion, even considering the inference against the insurer, is that only one conclusion can be reached, and that is that everybody knew that this young man was excluded. I don't believe that the, in this case, leaving out the last name because of the nature of name driver exclusion endorsements isn't ambiguous. Well, then how do we ever get the evidence in? If it's a question of law, that it's not ambiguous, and if you contend that it's not ambiguous, that it's a question of law, then the evidence would never come in. Right? Well, there's one important point here, is that counsel is looking at the endorsement as if it is separate, as if it's to be looked at, and that's the sole determination as to whether it's ambiguous as to who the excluded operator is. You look at the entire policy. The entire policy, in effect, at the date of the accident, states coverage is excluded with any vehicle operated by Robert Tucker Lytton. The only possible conclusion of that statement is, in fact, the name driver exclusion, which is Robert Tucker. So based on the policy as a whole, when viewed as a whole as opposed to the endorsement itself in isolation, there is no material issue of fact. There is no ambiguity as to who the parties intended for the excluded operator to be. And that's, which piece of the policy would we look at to see that? The declarations- The deck page. With the endorsement itself. The endorsement says Robert Tucker. The declarations say coverage is excluded when any vehicle operated by Robert Tucker Clinton. There's only, that language can only mean one thing, and that is the endorsement, which names Robert Tucker. Why did USA 9 include the last name? Well, the underwriting notes without the testimony make it clear they're referring to the son, Robert Tucker. You know, should they have included the last name? Of course they should have. USA knew exactly who they were talking about, and so did Mr. Clinton. You don't even have to consider his testimony. Again, we can go back to he's under the policy, he's an operator under the policy, he's insured under the policy, and now he's not, and his vehicle is no longer insured under the policy. Those objective facts based upon the policy documents in the renewal, in the policy renewals before the effective date of the name driver endorsement, and after the date of the name driver endorsement, make it clear that the excluded operator was Robert Tucker Clinton. Excuse me, you just said that his vehicle was no longer insured?  I guess I missed that in the facts. What vehicle is that? Let me just pull that down here. Because he was driving an insured vehicle. There's no question about that. He was driving the 2008 Kia, which was his father's main vehicle. Was it the old pickup truck? It was the old pickup truck. Okay, so that just wasn't insured any longer, or you don't have any idea who was insuring it? That was the Chevy C10. That ended up being insured by Geico. When the son was excluded, dad told the son before even the declarations got there, you're no longer insured under the policy, you've got to get your own policy. The son does. Again, we have Mr. Clinton's intentions as to who he intended to be excluded are clear at that point. The whole objective that this court has pointed out, and all courts have pointed out, is the primary objective. What are the intentions of the parties? Who did the parties intend to be the excluded operator? And as Judge Campanello said in referring to the motion for summary judgment before the trial, I got that. They had gotten a bellyful, exact. USAID did not want to insure the son. It wasn't a risk they were willing to insure. Mr. Clinton was given a choice. And part of the arguments in the refinery for talking about contracts of adhesion, I agree. Generally speaking, insurance contracts or contracts of adhesion is an endorsement, a contract of adhesion. Mr. Clinton was given a choice. Either you agree that your son is excluded, or you need to get other insurance. And that is the entire purpose of named driver exclusion endorsement, is to permit the insured to keep his affordable policy by excluding a driver, an operator, who the insurance company no longer wishes to insure. I'm sorry, Your Honor, did I answer your question about the- Yes, you did. Okay. But I do have one more question. The exclusionary clause, was there a signature of the father that was attached to that clause that was- Yes. The endorsement form itself is titled exclusion of named driver endorsement. It's got the policy number. It's issued to Robert Larry Clinton. It's got his address. It's got Robert Tucker, and it was signed and dated by Robert Larry Clinton, the insured, on May 27, 2010, faxed to USA that day. And based upon that, USA then issued the renewal policy with the son as excluded operator. Did I answer your question? Yes, you did. Okay. Again, I can't emphasize enough that this concept of construction of a policy in policy terms and words, is it ambiguous? Not dealing with-I remember reading this court's decision in Clayton. The court spent about five pages going over the dictionary definitions and cases as to what the definition of a warrant is. You can't go to any dictionary in this case. You can't go to any prior cases. You have to determine what the intentions of the parties are as to who Robert Tucker was intended to be. And when you look at it, if we disregard all the evidence and just look at the policy documents, as the court did in Dungy, actually the court in Dungy looked to surrounding circumstances to determine if there is an ambiguity as opposed to contradicting or varying, hence the important difference. And looking at the evidence of the policy itself, the documents themselves make it clear as to who the parties intended to exclude, makes it clear that this particular lien driver endorsement was intended to be and was in fact part of the policy and that this son was driving this vehicle, the father's vehicle, that was still a covered policy. Of course, as a result of the endorsement, it's no longer a covered vehicle. I struggled with this entire blank lien driver endorsement issue. I looked and looked and couldn't find any case that talks about, okay, you've got this blank document, exclusion of lien driver, and what does it mean? And the only, and as I indicated, that doesn't raise any ambiguity, it's just a blank form. I found one case that, and I searched and searched for a blank form, et cetera, case of Monroe, and it's not spelled like my name, it's M-U-N-R-O-E, versus Western Insurance Company, 735, 738, 8th Circuit, 2013. Is that in your brief? No, Your Honor, it's not. Why don't you file a motion to supplement the court? I will, Your Honor. And counsel, any of you, can reply to that. I'll just follow a standard motion. Really, that case, it was the UIN amendments were set forth in the declarations in the selection form as 500,000. There was a blank form, which had an area for the UIN amendments that was blank. And the court said, that doesn't create an ambiguity, it's a blank form. And specifically, that it doesn't leave the policy open to different separations. And the concept that there's no, because of the blank form, there's no operating exclusion, once again, it's based upon, that's correct. If you look at the blank name driver endorsement, in isolation from the remainder of the policy. When you look at the policy as a whole, as you must, it is clear who the name driver, the excluded operator is. And the law is also well settled with regard to looking at the, that the policy is not considered in a vacuum. And counsel for Sullivan, actually back in the 1988 case, I forgot the name and the number, but it's Bassett. This court said, when determining if there's an ambiguity, you don't look at the policy in isolation from the facts and circumstances given rise to the issuance of the policy. Really, the declaration pages prior to and after the name driver exclusion are nothing in the world but the facts and circumstances given rise to the policy, the renewal policy in force and effect on the date of the accident. Which in this particular case, the insured vehicle became uninsured as a result of the excluded operator, the son, operating the vehicle. Unless there's any other questions, you're asking about the time. I don't believe so. Thank you very much for your time. Counsel. Your Honor, as I recall, the Bassett case that I was involved in back in the 80s, that was an issue about whether an insurance broker had issued the right kind of coverage to the insurer who operated the daycare center in his home. So it's got nothing to do with the facts of this case. Your Honor, if it was clear on the face that there was no ambiguity, and if indeed USAA believed there was no ambiguity, then why did they bring in a underwriter from San Antonio? Why did they put the father on? Why did they go? Counsel tried to argue that really all this bootstrap was was looking at the four corners and explaining the four corners. It was far beyond that. He brought in the claims file. He brought in, like I said, the adjuster, I mean, the underwriter from San Antonio. And they were arguing clearly the intent of the parties. The intent of the parties bugger is what I'm trying to avoid here because in this particular case, as in most liability claims, the person making the claim is not a party to the contract. We're the injured third-party beneficiary of the contract. So now if that becomes the law, that when you have a poorly written contract, let's go back to the intent of USAA and the intent of the insurer, then the third party has got to go into all kinds of background proof and trying to figure out what they were thinking at the time and what the underwriters were thinking across the country. That's just not the law, nor should it be the law. It's well established that it should not be the law. Williston's own contract says, such reference to extrinsic evidence would concede the ambiguity of the term and the need to ascertain the intent of the parties, which is, I think, the issue you were raising about should we produce evidence or should we look into evidence to create an ambiguity. Illinois law, Baker says, intention is to be determined objectively by examining the language of the parties agreed upon rather than by any subjective explanation given in hindsight. If we go bring in underwriters, guess what they're going to say? Nine times out of ten, no, we didn't want that. That clause was meant to exclude everybody and everything. Mr. Doris, what do you say about Scrivener's error? I do have something to say about that. The case law says that Scrivener's error is not defined in Illinois law. It's sloppily used. It's been thrown around. And clearly, no Illinois case defines the term, but several have applied it. In each instance, the correction was mechanical or technical in nature, not decisional or judgmental. There's a Schaffner case out there cited in my brief, which basically said dealing with a mistake in the insurance policy having to do with premiums and how much was being charged for premiums. In the court in that case, Schaffner v. 514 West Grand Place Condo said, however, using a correct set of numbers for an incorrect year to compute insurance premiums when one should be using a different set of numbers, in other words, insurance rates for the correct year, does not, in our opinion, constitute a Scrivener's error or a clerical error. The error was not evidenced in the writing and cannot be proven now without parole evidence. And they didn't allow the insurance company to get off the hook for charging wrong premiums by saying that if they put those numbers in their policy, we're not going to call it just a clerical error and let them get out of it and rewrite the policy, basically. So this idea of a Scrivener's error, I'm not even sure what that is. The courts haven't defined it. I think you have an opportunity at this point to make clear that an entire last name being left out is not just a misspelling, you know, Doris with one R instead of two R's or something like that. That's pretty significant. And, again, that's something the court in their wisdom has to look at and decide whether that is a typo or whether that is a serious omission or something that is confusing. This court, in an interesting case, talks about intent of the parties. This court, in the Skidmore case, pointed out that that was a case in which there was a stacking issue and the insurance company brought in an affidavit from their own insurance saying we didn't intend stacking in the insurance for whatever reason. The insurance said, I agree, we didn't intend to stack. And the court, this court said... Go ahead. Finish your sentence. Thank you. You've got to look beyond just the main insurer and the insurer. You've got to look to the intent of the third parties because insurance covers third parties. And we won't let the two parties come into the contract and defeat coverage based on their own interpretation. Thank you, counsel. We appreciate the briefs and arguments of all counsel. We'll take the case under in counsel. Thank you.